UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                                        Case No. 04-cr-256-pp

PEDRO L. RIVAS,

                    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR RESENTENCING UNDER THE FIRST STEP ACT OF 2018 (DKT. NO. 45), BUT DELAYING IMPOSITION OF NEW SENTENCE PENDING A SUPPLEMENTAL REPORT FROM THE PROBATION DEPARTMENT**

         In October 2004, the defendant was indicted in a seven-count indictment; five counts charged him with possessing with intent to distribute cocaine base. Dkt. No. 1. On January 20, 2005, the defendant pled guilty to the charges (he entered a "blind" plea, without a plea agreement). Dkt. Nos. 18, 19. Judge Clevert sentenced the defendant on August 31, 2005; he imposed a sentence of 120 months on the 18 U.S.C. §924(c) gun charge; 170 months on each of the five cocaine base charges, to run concurrently with each other and with the 120 months on the gun charge; and 60 months on the last gun charge, to run consecutively to the sentences imposed on the other counts, for a total sentence of 230 months, or nineteen years and two months. Dkt. No. 32.

         On March 6, 2019, the defendant filed this motion, asking the court to reduce his sentence under the First Step Act of 2018. Dkt. No. 45. He asserts

that he is eligible for a sentence reduction because he was convicted of offenses that were modified by the Fair Sentencing Act of 2010, and he committed those offenses before that statute's effective date (August 3, 2010). Id. at 3-4. It appears that he is correct as to his eligibility—Judge Clevert sentenced the defendant five years before the FSA went into effect, and five of the counts of conviction involving charges of possession with intent to distribute cocaine base.

The defendant asks the court to re-sentence him as if the FSA had been in effect on the date he was sentenced. Id. at 6. But he also asks the court to apply current law to find (contrary to what Judge Clevert found in 2005) that he does not qualify as a career offender under §4B1.1 of the guidelines. Id. at 6-7. He argues that if the court re-sentences him (a) as if the FSA had been in effect and (b) without treating him as a career offender, his guidelines will drop from the 322 to 387 month total he faced before Judge Clevert to 144 to 165 months. Id. at 7. The defendant says that if the court agrees to his calculations, and "reduces [his] drug sentences to terms that result in his immediate release," he "agrees to waive his right to a hearing under the [First Step] Act." Id. at 10. If the court doesn't agree to reduce his sentence to one that results in immediate release, the defendant asks the court to schedule a hearing. Id. He asks the court to impose a sentence of 138 months each on Counts 2, 3, 4, 5 and 6, to run concurrently with each other and "to Count 1." Id. He makes no mention of the 60-month consecutive sentence Judge Clevert imposed on Count Seven.

The government objects. The government agrees that if the Fair Sentencing Act had been in effect at the time of the defendant's sentencing, the statutory maximum for his offenses would have been lower. Dkt. No. 48 at 3. But the government argues that under the career offender guideline, this would have no effect on the defendant's guideline range, nor would it have any effect on the sixty-month consecutive sentence required by Count Seven. Id. Second, the government argues that Judge Clevert gave the defendant the benefit of a below-guidelines sentence back in 2005. Id. Third, the government asserts that the defendant has had several disciplinary sanctions while in custody—possession of drugs or alcohol and assault of other inmates on several occasions. Id. Fourth, the government argues that the even if the original sentencing took place today, the defendant still would qualify as a career offender. Id. at 4 n.1. Finally, the government asserts that the First Step Act does not authorize the court to conduce a plenary sentencing, at which it starts from scratch in calculating the defendant's sentence. Id. at 4. The government argues that the First Step Act does nothing more than allow the court to consider what the defendant's sentence would have been had the FSA been in effect as of his original sentencing date. Id. For these reasons, the government urges the court to decline to use the discretion given it by the First Step Act, and to decline to reduce the defendant's sentence. Id. at 4-5.

In reply, the defendant first asserts that the parties do not dispute "that under today's law [the defendant] is not a career offender." Dkt. No. 51 at 1. (That is not the way the court read the government's objection.) Next, the

3

defendant argues that "[p]recedent and the text of the [First Step] Act" allow for plenary sentencing. Id. at 1-3. (He does not cite any "precedent;" he argues only that the authority cited by the government—Dillon v. United States, 560 U.S. 817 (2010)—is distinguishable. Id. at 2-4.) Third, he argues that even if the court treats him as a career offender, his guideline range still would be lower under the FSA than it was at the time of sentencing. Id. at 3. Fourth, he argues that the court should not deny his motion due to his disciplinary infractions, which he addressed in a letter to Judge Clevert.[1] Id. at 4. Finally, the defendant argues that the court should not impose a sentence of time served, because such a sentence "would trigger the beginning of that consecutive 924(c) sentence, thus lengthening his sentence by several years." Id. at 5. He argues that the First Step Act does not allow the court to increase sentences. Id.

The Original Sentencing

The court starts with how Judge Clevert calculated the 230-month sentence he imposed in 2005.

*Statutory Maximums*

The March 18, 2005 presentence investigation report indicates that the defendant was responsible for 46.1 grams of cocaine base—6.2 grams on July 30, 2004 for Count Two; 11.5 grams on August 3, 2004 for Count Three; 11.6 grams on August 19, 2004 for Count Four; 12.1 grams on August 20, 2004 for

---

[1] The defendant's letter to Judge Clevert explains that when he first began serving his sentence, he struggled with anger, and it caused him to make bad decisions. Dkt. No. 45-5. The letter goes on to discuss the lessons the defendant has learned while in custody, the ways he has changed, and his hopes for the future. Id.

Count Five, and 4.7 grams seized during the search of the defendant's residence on August 20, 2004 for Count Six.

In its response to the defendant's First Step motion, the government included a chart listing the offense dates and drug amounts. Dkt. No. 48 at 2. The amounts the government lists are less than the amounts reflected in the PSR—4.69 grams for Count Two, 9.63 grams for Count Three, 9.42 grams for Count Four, 9.59 grams for Count Give and 3.9 grams for Count Six. Id.

Either way, at least three of the counts to which the defendant pled— possibly four—involved five grams or more of cocaine base. At the time the defendant committed these offenses, 21 U.S.C. §841(b)(1)(B)(iii) provided that a defendant convicted of a drug offense involving five grams or more of cocaine base was subject to a five-year mandatory minimum sentence and a maximum sentence of forty years.

Section 841(b)(1)(B)(iii) also required that that if a defendant was convicted of a violation involving five grams or more of cocaine base "after a prior conviction for a serious drug felony or a serious violent felony has become final," that person was subject to an enhanced sentence—a mandatory minimum sentence of ten years and a maximum of life. A little over a week after the grand jury indicted the defendant, the government filed an information under 21 U.S.C. §851(a). Dkt. No. 9. That statute requires the government to give notice if it seeks an enhanced sentence based on qualifying prior convictions. The government's information provided that notice, listing two predicate drug offenses—a 1996 conviction for possession of cocaine with

5

intent to distribute, and a 2000 conviction for possession of marijuana, second offense. Id. Once the government had filed the information, the defendant faced a mandatory minimum sentence of ten years and a maximum of life on any count that involved five grams or more of cocaine base.

Count Seven charged the defendant with knowingly possessing a gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(a)(A)(i), dkt. no. 1 at 7; that crime carried (and still carries) a mandatory sentence of 60 months, to be imposed consecutively to any other sentence. The only count of conviction that did not carry a mandatory minimum sentence was Count One— the charge of being a felon in possession of a firearm. Regardless of the application of the sentencing guidelines, the defendant faced a mandatory minimum sentence of 180 months, or fifteen years, and a maximum sentence of life.

*The Sentencing Guidelines*

The PSR indicated that for Count One—the felon-in-possession charge— the base offense level was 24, plus 2 levels because the gun had an obliterated serial number, plus 4 levels because the defendant used or possessed the gun in connection with another felony (the drug offenses). The total offense level for Count One was 30.

For each of Counts Two through Six—the cocaine base charges—the base offense level was 30, with no enhancements, for a total offense level of 30.

For Count Seven—the §924(c) count—the guideline range was the mandatory statutory sentence of 60 months.

6

The PSR recommended that Judge Clevert grant the defendant a 2-level decrease for acceptance of responsibility under §3E1.1(a), as well as a 1-level decrease for timely notifying the government of his intent to plead under §3E1.1(b). This 3-level reduction resulted in an offense level of 27.

The defendant, however, had been convicted in state court on February 20, 1996 of felony possession of cocaine base with intent to distribute (an offense for which he'd received a sentence of twenty-two months in prison), and had been convicted on June 7, 2000 of second-degree recklessly endangering safety (pointing a rifle at the victim, who heard multiple shots fired as he fled). Under §4B1.1(a) of the 2004 guidelines—the career offender section—a defendant convicted of a controlled substance offense who was at least eighteen at the time of the offense of conviction and who had at least two prior felony convictions of either a crime of violence or a controlled substance offense qualified as a career offender. If the statutory maximum for the offense of conviction was life, §4B1.1(b)(A) increased his offense level to 37 (before acceptance). It also increased his criminal history category to VI (which did not impact the defendant; his criminal history category was VI even if he had not qualified as a career offender). Even with acceptance of responsibility, the defendant's offense level jumped from 27 to 34 in criminal history category VI, which resulted in a guideline range of 262 to 327 months.

That wasn't the end of the calculation. Section 4B1.1(c)(2) provided that if a career offender also was convicted of violating 18 U.S.C. §924(c)—which the defendant was—his guideline range jumped to the greater of the range that

resulted by adding the 60-month mandatory minimum sentence for the §924(c) count to the low and high ends of the career offender range and the range provided in the chart in §4B1.1(c)(3). In the defendant's case, adding the 60 months to the low and high ends of the career offender range resulted in a range of 322 to 387 months, while the charge in §4B1.1(c)(3) provided a range of 262 to 327 months (the same range applicable to the defendant under the career offender guideline without the §924(c) conviction). When the defendant walked into Judge Clevert's courtroom for sentencing in August 2005, he faced a sentence of 322 to 387 months—twenty-six years and ten months to thirty-two years and three months—with a mandatory minimum sentence of fifteen years.

*The 2005 Sentence*

But the defendant walked into Judge Clevert's courtroom for sentencing seven months after the United States Supreme Court had issued its decision in United States v. Booker, 543 U.S. 200 (2005), holding that mandatory sentencing guidelines violated the Constitution. Judge Clevert no longer was required to impose a sentence within that 322-to-387-month guideline range. He could not give the defendant less than ten years on the drug counts, he could not give him less than five years on the §924(c) count and he was required to impose the five-year §924(c) sentence to run consecutively to any other sentence he gave the defendant. Otherwise, he was not bound by the guidelines.

Judge Clevert varied from the guideline range. On Count One (felon in possession of a firearm), he sentenced the defendant to ten years—sixteen years and eight months below the low end of the guideline range. On each of the drug counts (Counts Two through Six) he imposed a sentence of 170 months, or fourteen years and two months—almost thirteen years below the low end of the guideline range, but about four years above the mandatory minimum ten-year sentence—and he imposed those sentences to run concurrently with each other and with the sentence he imposed in Count One. Finally, he imposed the mandatory 60-month sentence on Count Seven, and imposed it to run consecutively to the 170-month sentences he'd imposed on the drug counts, as the law required. The resulting sentence was 230 months.

<u>The First Step Act</u>

The First Step Act allows this court to resentence the defendant as if sections 2 and 3 of the Fair Sentencing Act of 2010 had been in effect when the defendant committed the cocaine base offenses in July and August 2004. Section 2(a) of the Fair Sentencing Act changed 21 U.S.C. §841(b)(1)(B)(iii). Instead of five grams of cocaine base triggering the mandatory minimum of five years and the maximum of forty—and the mandatory minimum of ten years and maximum of life for those defendants with two qualifying convictions— section 2(a) of the FSA raised the trigger amount to twenty-eight grams. Under section 2(a) the FSA, offenses involving less than twenty-eight grams of cocaine base carried no mandatory minimum sentence and a maximum of twenty

years; if the defendant had two qualifying prior convictions, he still faced no mandatory minimum, but his statutory maximum increased to thirty years.

<u>Calculating the Defendant's Sentence Under the FSA</u>

The court will set aside for the moment the ten-year sentence Judge Clevert imposed on Count One, and the mandatory, consecutive five-year sentence on Count Seven. The following discussion involves only the five cocaine base counts.

Calculating the defendant's sentence as if section 2(a) of the FSA had been in effect when he committed the drug offenses for which he was convicted, the defendant is no longer subject to a ten-year mandatory minimum for the counts that involved more than five grams of cocaine base. This means that if the court agrees to exercise its discretion to resentence the defendant, its sentence on the drug counts is subject only to the §3553 factors and the Supreme Court's requirement that it consider the applicable guidelines. The 2004 guidelines in effect at the time of the original sentencing assigned a base offense level of 30 to the 46.1 grams of cocaine base attributed to the defendant. The 2018 guidelines in effect today assign a base offense level of 24 to that amount of cocaine base. U.S.S.G. §2D1.1(c)(8).

As the court has noted, the defendant qualified as a career offender under §4B1.1(b), and a career offender's offense level is linked to the statutory maximum for his offense. Because the statutory maximum the defendant faced in 2005 was life, the applicable offense level under §4B1.1(b)(1) was 37. Under the FSA, the statutory maximum is thirty years, which means that under

§4B1.1(b)(2), the applicable offense level is reduced to 34. Minus the three points for acceptance of responsibility, the defendant's offense level under the FSA would be 31. Level 31 in criminal history category VI results in an advisory guideline range of 188 to 235 months, compared to the range of 262 to 327 months the defendant faced in 2005. Adding the sixty-month mandatory sentence for the §924(c) count to the low and high ends of this range under §4B1.1(c)(2) results in a sentencing range of 248 to 295 months, rather than the 322 to 387 month range the defendant faced in 2005. The new range would be 74 months lower on the low end and 92 months lower on the high end.

Judge Clevert sentenced the defendant to 170 months on the cocaine base counts—152 months below the 322-month minimum of the pre-FSA range, and 78 months below the low end of the new range. The sentence was a 47% reduction from the low end of the guideline range. A corresponding 47% reduction from the low end of the new guideline range would be a reduction of approximately 116 months, for a new sentence on the drug charges of 132 months. A sentence of 132 months on each of the five drug counts, imposed concurrently to each other and to the 120-month sentence Judge Clevert imposed on Count One, plus the 60-month consecutive sentence imposed on Count Seven, would result in a sentence of 192 months.

The Career Offender Classification

The defendant argues, however, that due to changes in the law since he was sentenced, he no longer qualifies as a career offender. Dkt. No. 45 at 6-7. He asserts that his June 7, 2000 conviction for second degree recklessly

endangering safety no longer qualifies as a predicate offense under §4B1.1(a), citing United States v. Hill, 372 F. App'x 656, 657-58 (7th Cir. 2010). Id. The government disagrees, arguing that although the Sentencing Commission has amended §4B1.2(a)(2)—which defines a "crime of violence" for the purpose of §4B1.1(a)—since the defendant's sentencing, the amendment was not retroactive. Dkt. No. 48 at 4 n.1. The government states that the defendant's "conviction for Second Degree Recklessly Endangering Safety, in which he aimed and fired a rifle at a person several times, therefore remains a qualifying conviction under the former Career Offender Guideline." Id. The defendant responds that he's not relying on the amendment to the career offender guideline for his assertion that he's no longer a career offender; he's relying on Seventh Circuit precedent. Dkt. No. 51 at 4, n.1.

Under §4B1.2(a)(1), a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." In deciding whether a particular crime meets that definition, a sentencing court looks only to "the fact of conviction and the statutory definition of the prior offense," and not to the "particular facts disclosed by the record of conviction." United States v. Woods, 576 F.3d 400, 403 (7th Cir. 2009) (quoting James v. United States, 550 U.S. 192, 202 (2007) (internal citations omitted).

The defendant was convicted of second-degree recklessly endangering safety in violation of Wis. Stat. §941.30(2). State v. Pedro L. Rivas, Case No. 1999CF005039 (accessible at https://wcca.wicourts.gov, last checked April 16,

2019). In 2008, the Seventh Circuit held (and the parties agreed) that "criminal recklessness, as defined by the Indiana Code does not fall within" the identical definitional paragraph of the Armed Career Criminal Act. United States v. Smith, 544 F.3d 781, 783 (7th Cir. 2008). In 2010, the court extended that holding and found that "an offense for which the mental state is recklessness is not a 'crime of violence' under the career-offender guideline because it does not meet the parallel standards for violent felonies established by the Supreme Court in *Begay* [*v. United States*, 553 U.S. 137 (2008)]." Hill, 372 Fed. App'x at 657. The Hill decision involved the very offense for which the defendant was convicted and sentenced in June 2000—second-degree recklessly endangering safety in violation of Wis. Stat. §941.30(2). Id. at 657-58.

Since at least March 2010, therefore, and possibly earlier, the law in this circuit has excluded second-degree recklessly endangering safety as a "crime of violence" that would act as a predicate conviction triggering a career offender classification under §4B.1. The defendant has provided no authority, however, holding that the Hill decision applies retroactively.

Plenary Review of the Entire Sentence

This brings the court to the defendant's argument that if he qualifies for a sentence reduction under the First Step Act, the court has the discretion to reduce not just the portion of his sentence that resulted from his possession of cocaine base, but all aspects of his sentence.

Section 404(b) of the First Step Act says that a court that imposed a sentence "for a covered offense" "may . . . impose a reduced sentence as if

sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." The court reads these two provisions to state that it has the discretion to reduce the defendant's sentence on the *covered offenses*—the drug counts—to the sentence he would have received if section 2(a) of the FSA had been in effect when he committed the drug offenses.

The defendant argues, however, that the court's authority to "resentence pre-FSA crack defendants is limited in only two obvious ways." Dkt. No. 45 at 4. He points to §404(c) of the First Step Act, entitled "Limitations," which says that a court cannot entertain a sentence reduction motion under the Act if the defendant already has had the benefit of being sentenced under sections 2 or 3 of the FSA, or if the defendant already has had a First Step sentence reduction motion denied "after a complete review of the motion on the merits." The defendant argues that these are the only two "limits" on the court's resentencing authority. In his reply brief, he argues that §404 "gives courts broad power to impose lower sentences, cabined only by the FSA statutory ranges, without limiting what a court can consider." Dkt. No. 51 at 2. He says that §404(c)'s reference to a "complete review on the merits" requires courts to "review all available information." Id.

The government responds that the First Step Act does not "require plenary resentencing." Dkt. No. 48 at 4. The government asks the court to look at the reasoning employed by the Supreme Court in <u>Dillon v. United States</u>, 560 U.S. 817 (2010), arguing that if this court applies the <u>Dillon</u> Court's reasoning, it will conclude that the First Step Act does not authorize plenary resentencing. The defendant replies that <u>Dillon</u> is inapposite. Dkt. No. 51 at 2-3.

In <u>Dillon</u>, the Supreme Court considered an amendment to the sentencing guidelines. It began with 18 U.S.C. §3582(c), which prohibits courts from modifying sentences once they have been imposed. <u>Dillon</u>, 560 U.S. at 819. The Court noted that one of the exceptions to that prohibition allowed a court to modify a sentence post-imposition for "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." <u>Id.</u> (quoting 18 U.S.C. §3582(c)(2)). Even then, the Court noted, the policy statement governing §3582(c)(2) "instructs courts not to reduce a term of imprisonment below the minimum of an amended sentencing range except to the extent the original term of imprisonment was below the range then applicable." <u>Id.</u> (citing U.S.S.G. §1B1.10(b)(2)). The question before the <u>Dillon</u> Court was whether its decision in <u>Booker</u>, rendering the sentencing guidelines advisory, required courts to treat that instruction as non-binding. The court concluded that "*Booker* [did] not demand that result." <u>Id.</u>

The court agrees with the defendant that the reasoning in <u>Dillon</u> isn't helpful in analyzing the sentence reduction authority Congress has granted the courts through §404. That is because <u>Dillon</u> analyzed the part of §3582(c) that allows courts to reduce a defendant's sentence after the Sentencing Commission has reduced the applicable sentencing range—§3582(c)(2). The defendant is not asking for a reduced sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," under §3582(c)(2). He is asking the court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ," under 18 U.S.C. §3582(c)(1)(B). <u>See</u>, <i>e.g.</i>, <u>United States v. Delaney</u>, Case No. 6:08-cr-00012, 2019 WL 861418 at *1 (W.D. Va., Feb. 22, 2019) ("Modifications of sentences under the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B)"); <u>United States v. Fountain</u>, Case No. 1:09-cr-00013-MR-WCM-9, 2019 WL 637715 at *2 (W.D.N.C., Feb. 14, 2019) (concluding that the defendant was eligible for a reduced sentence under the First Step Act and 18 U.S.C. §3582(c)(1)(B), "(allowing the court to modify a sentence 'to the extent otherwise expressly permitted by statute')"); <u>United States v. Copple</u>, Case No. 17-cr-40011-JPG-009, 2019 WL486440 at *2 (S.D. Ill., Feb. 7, 2019) (rejecting the suggestion that the "proper vehicle" to implement §404 was a motion under §3582(c)(2), and expressing the belief that "the better vehicle to impose a reduced term of imprisonment is § 3582(c)(1)(B)) . . . ."); <u>United States v. Kamber</u>, Case No. 09-cr-40050-JPG, 2019 WL 399935 at *2 (S.D. Ill., Jan. 31, 2019) (same holding as <u>Copple</u>).

Several courts have considered whether §404(b) of the First Step Act "expressly permit[s]" plenary resentencing. On March 6, 2019, two district courts in different districts held that it does not. In <u>United States v. Davis</u>, Case No. 07-cr-2458(1), 2019 WL 1054554 at *2 (W.D.N.Y., Mar. 6, 2019), the defendant argued that the First Step Act "authorizes full resentencing." The <u>Davis</u> court found that the Act "contemplates a recalculation of a defendant's Guidelines numbers under the Fair Sentencing Act and a possible sentencing reduction consistent therewith, if warranted." Judge Skretny observed that "[n]owhere does the Act expressly permit the type of plenary resentencing or sentencing anew that [the defendant] advocates." <u>Id.</u> Davis also argued that Judge Skretny should impose a sentence of 151 months, "the lowest end of the new applicable Guidelines range," rather than a sentence of time served. <u>Davis</u>, 2019 WL 1054554 at *1, n. 2. The probation office had prepared a supplemental presentence report to assist the court; it showed that the defendant's new guideline range was 151 to 188 months with an eight-year term of supervised release, and that the defendant had served more than 136 months and accrued 600 days of good-time credit. <u>Id.</u> at *3. Judge Skretny concluded that imposing a determinate sentence of 151 months "would result in an overserved sentence, which this Court will not permit for public safety and deterrence reasons." <u>Id.</u> He granted the First Step motion, but imposed a sentence of time served. <u>Id.</u> at (The defendant has appealed this decision to the Second Circuit.)

The same day, a court in the Southern District of Florida came to the same conclusion. In United States v. Potts, Case No. 02:90-cr-14010-ROSENBERG, 2019 WL 1059837 at *2 (S.D. Fla., Mar. 6, 2019), the defendant argued in his First Step motion that the sentencing court had violated Supreme Court precedent in calculating the amount of cocaine base attributable to him, and that "due to developments in the law since his sentencing, he no longer qualifie[d] as a career offender." Citing Eleventh Circuit precedent, the Potts court held that "[a] 'defendant is not entitled to a full resentencing during a § 3582(c) proceeding.'" Id. (quoting United States v. Cole, 417 F. App'x 922, 923 (11th Cir. 2011)). It held that §3582(c) does not give a court "jurisdiction to consider extraneous resentencing issues," id. (quoting United States v. Bravo, 203 F.3d 778, 781-82 (11th Cir. 2000)), and that "original sentencing determinations remain unchanged" in a §3582(c) resentencing, id. (citing Cole, 417 F. App'x at 923). The court found that the First Step Act did not "expressly" provide for plenary resentencing or reconsideration of prior sentencing decisions; "[t]he First Step Act simply permits a court to 'reimpose a reduced sentence' as if the Fair Sentencing Act's increased cocaine base requirements 'were in effect at the time the covered offense was committed.'" Id. (quoting Pub. L. No. 115-391, 132 Stat. 5194).

The Potts court also rejected one of the arguments the defendant makes here—that by using the word "impose," the First Step Act allows courts to conduct full resentencings. The defendant in this case argues that "[f]ederal sentencing statutes regularly use the verb 'impose' to mean 'sentence,'" and

18

argued that the fact that the Act states that a court may "impose" a reduced sentence shows that Congress meant for courts to conduct plenary resentencings. Dkt. No. 51 at 2. The Potts court noted, however, that it had to read the Act's use of the word "impose" in context: "The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence." Potts, 2019 WL 1049837 at *3. Read in that context, the Potts court concluded that the word "impose" did not invite a plenary resentencing.

A week later, another judge in the Western District of New York reached the same conclusion. In United States v. Sampson, 360 F. Supp. 3d 168, 170 (W.D.N.Y. 2019), the defendant argued that he was entitled to a plenary resentencing under 18 U.S.C. §3582(c)(1)(B) and that he was entitled to be present at that resentencing. He also asked for a "'new' sentence of 123 months," while the government and the probation office recommended that the court impose a sentence of time served. Id. The Sampson court "agreed with Judge Skretny [in Davis] that a full resentencing is neither required nor called for." Id. at 171. It granted the motion, and reduced the defendant's sentence to time served. Id.

The District of Nebraska followed suit on March 20. The court in United States v. Russo first noted that nothing in the First Step Act required a court to reduce a qualifying defendant's sentence. United States v. Russo, Case No. 8:03CR413, 2019 WL 1277507 at *1 (D. Neb., Mar. 20, 2019). With regard to the defendant's argument that the Act "anticipates a full re-sentencing with

application of laws and Guidelines that have changed since a defendant's original sentencing," the <u>Russo</u> court found that if it were to engage in such an exercise, "it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010." <u>Id.</u> <u>See also</u>, <u>United States v. Haynes</u>, Case No. 8:08CR441, 2019 WL 1430125 at *2 (D. Neb., Mar. 29, 2019) (same holding, with some expanded reasoning).

This court agrees with those courts. The First Step Act does not "expressly permit" the court to conduct a plenary resentencing. It does not authorize the court to disturb the 120-month sentence Judge Clevert imposed on Count One. It does not authorize the court to disturb Judge Clevert's conclusion that the defendant qualified as a career offender, or ignore the requirement that a court must impose the five-year mandatory sentence required by §924(c) to run consecutively to any other sentence imposed. It authorizes the court to do one thing—recalculate the sentence on the five cocaine base counts as if section 2(a) of the FSA had been in effect when he committed those crimes.

The court does not believe that recalculating the defendant's sentence on Counts Two through Six will result in a time-served sentence. The PSR indicated that the defendant was arrested on August 20, 2004 and placed into state custody for this offense, then turned over to federal custody on November 2, 2004. If the Bureau of Prisons calculates the defendant's federal time starting on August 20, 2004, he has been in custody for 175 months and

twenty-eight days—less that the 192 months the court believes would be the new sentence. If the Bureau of Prisons calculates the defendant's federal time starting on November 2, 2004, he has been in custody for 173 months and fifteen days. The court does not know exactly how long the defendant has been in custody and how much time he has served. Nor does the court know if its calculations the defendant's post-FSA sentence are correct. To avoid possible problems, the court will not impose a new sentence until it can obtain an analysis and recommendation from the probation office (something it should be doing in every case in which a defendant files a First Step motion).

The court will not, however, schedule a sentencing hearing with the defendant present. As several of the courts above have noted, Fed. R. Crim. P. 43(b)(4) provides that a defendant "need not be present" at a proceeding that "involves the . . . reduction of sentence under . . . 18 U.S.C. § 3582(c)." The court will be reducing the defendant's sentence under 18 U.S.C. §3582(c)(1)(B). Under Rule 43, his presence is not required.

Conclusion

The court **GRANTS** the defendant's Motion for Resentencing Under the First Step Act of 2018, to the extent that it asks the court to recalculate under section 2(a) of the FSA the sentence he received on Counts Two through Six. Dkt. No. 45.

The court **DEFERS** imposition of the reduced sentence pending receipt of a supplemental presentence report from the probation office.

The court **ORDERS** that the probation office shall prepare a supplemental presentence report, calculating the guidelines for Counts Two through Six as if section 2(a) of the FSA had been in effect when the defendant committed those crimes, and indicating what the defendant's total sentence would be if all other original sentencing determinations remained unchanged.

Dated in Milwaukee, Wisconsin this 18th day of April, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**